

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 29, 1948

Hon. Harry Benge Crozier, Chairman
Texas Employment Commission
Austin, Texas

Opinion No. V-620

Re: The authority of the
Texas Employment Com-
mission to grant a re-
fund of taxes volun-
tarily paid, upon a
finding that an incor-
rect rate of tax was
Dear Mr. Crozier:                paid.

We refer to your letter wherein you request
the opinion of this office concerning whether the Tex-
as Employment Commission has the power, right or au-
thority to grant under Article 5221b-12(j), V. C. S.,
(now Article 5221b-12(j) (1), V. C. S.) a refund of
unemployment compensation taxes as applied for by
Consolidated Steel Corporation.

As to the circumstances surrounding this
application for a refund, we quote from your letter
as follows:

"The Consolidated Steel Corporation
was assessed by this Commission unemploy-
ment compensation taxes for the year of
1944 at a rate of 2.7%. The Corporation
voluntarily paid the taxes for the first
quarter of this year at the rate of 2.7%.
At a later date and during the second
quarter of 1944, the Corporation decided
that its rate for 1944 should be 0.5% in-
stead of 2.7% and paid its taxes for the
second quarter of 1944 at the rate of
2.7%, but under protest, claiming the cor-
rect rate at which it should pay its tax-
es for 1944 was 0.5%. Such was likewise

the procedure it followed for the taxes
that accrued during the third and fourth
quarters of 1944.

"Suit was instituted under Article
7057b for the recovery of the taxes paid
under protest for the second, third and
fourth quarters of 1944. . . . "

"Consolidated Steel Corporation pre-
vailed in the suit brought for the recov-
ery of the taxes paid under protest for
the second, third and fourth quarters of
1944. Now the Corporation comes before
this Commission and seeks a refund under
Article 5221b-12(j) of the taxes volun-
tarily paid for the first quarter of 1944
in excess of a computation at the rate of
0.5% . . . . "

The Texas Employment Commission is given
the authority to make refunds by Article 5221b-12 (j)
(1), which reads:

"Where any employing unit has made a
payment to the Commission of contributions
alleged to be due, and it is later deter-
mined that such contributions were not due,
in whole or in part, the employing unit
making such payment may make application
to the Commission for an adjustment there-
of in connection with contribution pay-
ments then due, or for a refund thereof
because such adjustment cannot be made,
and if the Commission shall determine that
such contributions or penalty, or any por-
tion thereof were erroneously collected,
the Commission shall allow such employing
unit to make an adjustment thereof with-
out interest in connection with contribu-
tion payments then due by such employing
unit, or, if such adjustment cannot be
made, the Commission shall refund said a-
mount without interest from the Fund, pro-
vided that no application for adjustment
or refund shall ever be considered by the
Commission unless the same shall have been
filed within four (4) years from the date

on which such contributions or penalties
would have become due, had such contribu-
tions been legally collectible by the Com-
mission from such employing unit.  For
like cause, and within the same period,
adjustment or refund may be so made on
the Commission's own initiative."

Unquestionably this article gives the Com-
mission the authority to make adjustments or grant
refunds of taxes where it has been determined that
such taxes have been erroneously collected.  As to
the application of this statute, this Court in the
case of James v. Consolidated Steel Corporation,
195 S. W. (2d) 955, refused, N. R. E., held that it
"relates to errors made either by the contributor
or by the Commission in the calculation or collec-
tion of such taxes which have been paid voluntarily."

It has been determined that the taxes for
which refund is here sought have been erroneously
collected under the provisions of the Texas Unem-
ployment Compensation Act.  Rates at which taxes are
paid are computed upon a calendar year basis.  Since
the Court in the case of James v. Consolidated Steel
Corporation held that the rate at which Consolidated
should have paid its taxes for the last three quar-
ters of 1944 was .5%, it necessarily follows that the
rate at which it should have paid its taxes for the
first quarter of 1944 was .5% instead of 2.7%, the
rate at which it paid the taxes for this quarter.

It is apparent from your request that Con-
solidated's application for a refund relates to tax-
es voluntarily paid through errors of the contribu-
tor or the Commission in the calculation or collec-
tion thereof.

Based upon the foregoing, it is our opinion
that the Texas Employment Commission has the power,
right and authority to grant the refund as applied
for by Consolidated Steel Corporation.

The delay in replying to this request has
been occasioned by careful study and briefing and
the holding of numerous conferences with reference
to every phase of this question.  As requested we
are returning the application attached to your let-
ter.

## SUMMARY

The Texas Employment Commission has the power, right and authority under Art. 5221b-12(j) (1), V. C. S., to grant a refund of unemployment compensation taxes erroneously paid.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By *Robert O. Koch*

Robert O. Koch
Assistant

APPROVED

*Price Daniel*

ATTORNEY GENERAL

ROK:amm:mrj